# UNITED STATES DISTRICT COURT
# DISTRICT OF DELAWARE

--------------------------------------------------------

SHIVA STEIN,                                    :
                                                :
           Plaintiff,                          :   Civil Action No. _____
                                                :
v.                                              :   **COMPLAINT FOR VIOLATIONS OF**
                                                :   **SECTIONS 14(a) AND 20(a) OF THE**
CONCHO RESOURCES INC., TIM LEACH,               :   **SECURITIES EXCHANGE ACT OF**
STEVE BEAL, TUCKER BRIDWELL, BILL               :   **1934**
EASTER, STEVE GRAY, SUSAN HELMS,                :
GARY MERRIMAN, MARK PUCKETT, and                :   **JURY TRIAL DEMANDED**
JOE WRIGHT,                                     :
                                                :
           Defendants.                        :

--------------------------------------------------------

Shiva Stein ("Plaintiff"), by and through her attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1.     This is an action brought by Plaintiff against Concho Resources Inc. ("Concho Resources" or the "Company") and the members of Concho Resources' board of directors (the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9 and 17 C.F.R. § 244.100, in connection with the proposed merger between Concho Resources and ConocoPhillips and its affiliates ("ConocoPhillips").

2.     Defendants have violated the above-referenced sections of the Exchange Act by causing a materially incomplete and misleading Registration Statement on Form S-4 (the "Registration Statement") to be filed on November 18, 2020 with the United States Securities and

Exchange Commission ("SEC") and disseminated to the Company's stockholders. The Registration Statement recommends that the Company's stockholders vote in favor of a proposed transaction whereby Falcon Merger Sub Corp., a wholly-owned subsidiary of ConocoPhillips, will merge with and into Concho Resources, with Concho Resources surviving as a wholly-owned subsidiary of ConocoPhillips (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into (the "Merger Agreement"), each Concho Resources stockholder will receive 1.46 ConocoPhillips shares (the "Merger Consideration").

3. As discussed below, Defendants have asked Concho Resources' stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Registration Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the Registration Statement contains materially incomplete and misleading information concerning, among other things, the analyses performed by the Company's financial advisors, Credit Suisse Securities (USA) LLC ("Credit Suisse") and J.P. Morgan Securities LLC ("J.P. Morgan" and together with Credit Suisse, the "Financial Advisors"), in support of their fairness opinions.

4. It is imperative that the material information that has been omitted from the Registration Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Concho Resources' stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7.      Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

8.      Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Concho Resources is incorporated in this District.

## PARTIES

9.      Plaintiff is, and has been at all relevant times, the owner of Concho Resources stocks and has held such stocks since prior to the wrongs complained of herein.

10.      Individual Defendant Tim Leach has been Chairman of the Board and the Company's Chief Executive Officer since the formation of Concho in 2004 and also served as the Company's President until 2017.

11.      Individual Defendant Steve Beal has served as a member of the Board since 2006.

12.      Individual Defendant Tucker Bridwell has served as a member of the Board since 2006.

13.      Individual Defendant Bill Easter has served as a member of the Board since 2008.

14.      Individual Defendant Steve Gray has served as a member of the Board since 2018.

15.      Individual Defendant Susan Helms has served as a member of the Board since 2017.

16.     Individual Defendant Gary Merriman has served as a member of the Board since 2012.

17.     Individual Defendant Mark Puckett has served as a member of the Board since 2009.

18.     Individual Defendant Joe Wright has served as a member of the Board since 2017.

19.     Defendant Concho Resources a Delaware corporation and maintains its principal offices at One Concho Center, 600 West Illinois Avenue, Midland, Texas 79701.  The Company's stock trades on the New York Stock Exchange under the symbol "CXO."

20.     The defendants identified in paragraphs 10-18 are collectively referred to as the "Individual Defendants" or the "Board."

21.     The defendants identified in paragraphs 10-19 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

A.      **The Proposed Transaction**

22.     Concho Resources, an independent oil and natural gas company, engages in the acquisition, development, and exploration of oil and natural gas properties in the United States. The Company's principal operating areas are located in the Permian Basin of West Texas and southeast New Mexico. As of December 31, 2019, its estimated proved reserves totaled 1.0 billion barrels of oil equivalent.  The Company was founded in 2006 and is headquartered in Midland, Texas.

23.     On October 19, 2020, the Company and ConocoPhillips jointly announced the Proposed Transaction:

> HOUSTON & MIDLAND, Texas--(BUSINESS WIRE)--
> ConocoPhillips (NYSE: COP) and Concho Resources (NYSE:
> CXO) today announced that they have entered into a definitive

agreement to combine companies in an all-stock transaction. Under the terms of the transaction, which has been unanimously approved by the board of directors of each company, each share of Concho Resources (Concho) common stock will be exchanged for a fixed ratio of 1.46 shares of ConocoPhillips common stock, representing a 15 percent premium to closing share prices on October 13. The transaction combines two high-quality industry leaders to create a company with an approximately $60 billion enterprise value that will offer stakeholders a superior investment choice for sustainable performance and returns through cycles. Highlights of the transaction include:

- Two best-in-class asset portfolios that create a combined resource base of approximately 23 billion barrels of oil equivalent with a less than $40 per barrel WTI cost of supply and an average cost of supply below $30 per barrel WTI.
- High-quality balance sheet that offers superior sustainability, resilience and flexibility across price cycles.
- ConocoPhillips and Concho expect to capture $500 million of annual cost and capital savings by 2022.
- A financial framework that delivers greater than 30 percent of cash from operations via compelling dividends and additional distributions.
- Elevated commitment to environmental, social and governance excellence with a newly adopted Paris-Aligned Climate Risk strategy, available at *www.conocophillips.com*.

"The leadership and boards of both companies believe today's transaction is an affirmation of our commitment to lead a structural change for our vital industry," said Ryan Lance, ConocoPhillips chairman and chief executive officer. "Concho is a tremendous fit with ConocoPhillips. Together, ConocoPhillips and Concho will have unmatched scale and quality across the important value drivers in our business: an enviable low cost of supply asset base, a strong balance sheet, a disciplined capital allocation approach, ESG excellence and great people. Importantly, the transaction meets our long-stated and clear criteria for mergers and acquisitions because it is completely consistent with our financial and operational framework."

"Through this combination, we are joining a diversified energy company with even more scale and resources to create shareholder value in today's markets and beyond," said Tim Leach, chairman and chief executive officer of Concho Resources. "Thanks to our team, Concho is one of the largest unconventional shale producers in the United States, with a high-quality asset base, a culture of operational excellence, safety and efficiency, and a strong balance sheet. Through consolidation, we will apply our assets, capabilities and superior performance to the business model of the future, creating a better-capitalized company with enhanced capital discipline,

5

more flexibility and an unwavering commitment to sustainability. From our position of strength and in light of market trends, our board of directors and management team evaluated a wide range of options and unanimously determined that combining with ConocoPhillips is the best path forward for Concho and our shareholders. We look forward to bringing together our complementary operations, teams and cultures to realize the upside potential of this exciting combination."

**Transaction Rationale and Benefits**

Today's transaction brings together two companies with the leadership, assets and a capital allocation approach to generate growing free cash flow, supported by a top-tier investment-grade balance sheet that provides investors with sustainability, resilience and flexibility. The combined company will have competitive advantages across sector fundamentals:

- **Combination creates leading company with scale and relevance:** The transaction offers a compelling combination of size, best-in-class assets, financial strength and operating capability. The new ConocoPhillips will be the largest independent oil and gas company, with pro forma production of over 1.5 million barrels of oil equivalent per day (MMBOED).

- **Massive, diversified and low cost of supply resource base provides years of high-value investments:** The combined company will hold approximately 23 billion barrels of oil equivalent (BBOE) resources with an average cost of supply of below $30 per barrel WTI. The transaction brings together contiguous and complementary "core-of-the-core" acreage positions across the Delaware and Midland basins to create an unconventional powerhouse that also includes leading positions in the Eagle Ford and Bakken in the Lower 48 and the Montney in Canada. The expanded Permian position provides a strong complement to ConocoPhillips' other globally diverse, low-capital-intensity legacy positions.

- **Disciplined capital allocation criterion will drive investment decisions:** The company's portfolio will be developed for value and free cash flow. The company will target an average reinvestment level of less than 70 percent of cash from operations to ensure sufficient free cash flow generation to fund compelling returns of capital to shareholders.

- **Significant cost and capital savings will drive uplift in value and sustained cost structure improvement:** The companies announced that together they expect to capture $500 million of annual cost and capital savings by 2022. The identified savings will come from lower general and administrative costs and a reduction in ConocoPhillips' future global new ventures exploration program. This de-emphasis of ConocoPhillips' organic resource addition program is driven by the addition of Concho's large, low-cost resource base. Additional supply chain, commercial and

drilling and completion capital efficiency savings are not yet included in these cost-reduction estimates.

- **Proven technical and operational expertise will be applied across the combined portfolio to unlock value:** Both ConocoPhillips and Concho are already recognized leaders in oil and gas technology and operations. As part of the planned integration, the company will adopt a "best practices" approach that will share learnings and select best practices focused on the North American unconventional portfolio.

- **High-quality balance sheet provides resilience through cycles and supports commitment to sustainable shareholder return of capital:** ConocoPhillips will offer a compelling ordinary dividend supplemented by additional distributions as needed to meet its target distribution of greater than 30 percent of cash from operations. The company seeks to maintain a strong investment-grade credit rating across price cycles. On a pro forma basis, the combined company net debt is approximately $12 billion as of June 30, 2020, representing an attractive leverage ratio of 1.3 at 2021 consensus commodity prices.

- **The companies share a track record of and commitment to ESG excellence:** The combination creates a platform for leading the sector into the energy transition and a low-carbon future. The combined entity will be the first U.S.-based oil and gas company to adopt a Paris-aligned climate risk strategy to meet an operational (Scope 1 and Scope 2) net-zero emissions ambition by 2050.

**Leadership and Governance**

Upon closing, Concho's Chairman and Chief Executive Officer Tim Leach will join ConocoPhillips' board of directors and executive leadership team as executive vice president and president, Lower 48. This transaction will enhance the company's competitive position in Midland.

**Transaction Details**

The transaction is subject to the approval of both ConocoPhillips and Concho stockholders, regulatory clearance and other customary closing conditions. The transaction is expected to close in the first quarter of 2021. In the meantime, an integration planning team consisting of representatives from both companies will be formed to ensure required business processes and programs are implemented seamlessly post-closing. In light of the pending merger, ConocoPhillips has suspended share repurchases until after the transaction closes.

Lance continued, "Opportunities to consolidate quality on the scale of these two companies do not come along often, so we are seizing this moment to

create a company to lead the necessary transformation of our vital sector for the benefit for all stakeholders in the future."

ConocoPhillips will host a conference call today at 8 a.m. Eastern time to discuss this announcement. To listen to the call and view related presentation materials, go to *www.conocophillips.com/investor*.

**Advisors**

Goldman Sachs & Co. LLC is serving as exclusive financial advisor to ConocoPhillips, and Wachtell, Lipton, Rosen & Katz is serving as ConocoPhillips' legal advisor. Credit Suisse Securities (USA) LLC and J.P. Morgan Securities LLC are acting as financial advisors to Concho. Sullivan & Cromwell LLP is acting as legal advisor to Concho.

\* \* \*

24.     The Board has unanimously agreed to the Proposed Transaction.  It is therefore imperative that Concho Resources' stockholders are provided with the material information that has been omitted from the Registration Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

**B.     <u>The Materially Incomplete and Misleading Registration Statement</u>**

25.     On November 18, 2020, Concho Resources and ConocoPhillips jointly filed the Registration Statement with the SEC in connection with the Proposed Transaction.  The Registration Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction.  The Individual Defendants were obligated to carefully review the Registration Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions.  However, the Registration Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning

whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning Financial Projections*

26.     The Registration Statement fails to provide material information concerning financial projections by management and relied upon by the Financial Advisors in their analyses. The Registration Statement discloses management-prepared financial projections for the Company which are materially misleading. The Registration Statement indicates that in connection with the rendering of the fairness opinions, management prepared certain non-public financial forecasts (the "Concho Projections," "Concho Projections For ConocoPhillips," and "ConocoPhillips Projections") and provided them to the Board and the Financial Advisors with forming a view about the stand-alone and pro forma valuations.  Accordingly, the Registration Statement should have, but fails to provide, certain information in the projections that managements provided to the Board and their financial advisors. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

27.     For the Company Projections, Concho Projections For ConocoPhillips, and ConocoPhillips Projections for Cases A through D, the Registration Statement provides values for the non-GAAP (Generally Accepted Accounting Principles) financial metric for fiscal years 2021 through 2025: EBITDAX, but fails to provide line items used to calculate this metric or a reconciliation of this non-GAAP metric to its most comparable GAAP measure in direct violation of Regulation G and consequently Section 14(a).

28.     When a company discloses non-GAAP financial measures in a registration statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

29.     The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.

30.     Thus, to cure the Registration Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Registration Statement, Defendants must provide a reconciliation table of the non-GAAP measure to the most comparable GAAP measure to make the non-GAAP metric included in the Registration Statement not misleading.

*Omissions and/or Material Misrepresentations Concerning Financial Analyses*

31.     With respect to Credit Suisse's *Selected Companies Analysis*, the Registration Statement fails to disclose: (1) the reason Concho directed Credit Suisse to use the Concho

Projections Case A and Concho Projections for ConocoPhillips Case A for the analyses; and (ii) the individual multiples and financial metrics for the companies observed by Credit Suisse in the analysis.

32.     With respect to Credit Suisse's *Discounted Cash Flow Analysis* for Concho Resources, the Registration Statement fails to disclose: (i) the Company's estimated value of the projected after-tax, unlevered, free cash flows and all line items used to calculate them; (ii) the inputs and assumptions underlying the application of terminal multiples of 5.0x to 6.0x to Concho Resources' estimated EBITDAX for the year ended December 31, 2030; (iii) Concho Resources' estimated EBITDAX for the year ended December 31, 2030; and (iv) the inputs and assumptions underlying the discount rates ranging from 9.0% to 11.0%.

33.     With respect to Credit Suisse's *Discounted Cash Flow Analysis* for ConocoPhillips, the Registration Statement fails to disclose: (i) ConocoPhillips' (as provided by both Concho Resources and ConocoPhillips) estimated value of the projected after-tax, unlevered, free cash flows and all line items used to calculate them; (ii) the inputs and assumptions underlying the application of terminal multiples of 6.0x to 7.0x to ConocoPhillips' estimated EBITDAX for the year ended December 31, 2030; (iii) ConocoPhillips' estimated EBITDAX for the year ended December 31, 2030; and (iv) the inputs and assumptions underlying the discount rates ranging from 8.0% to 10.0%.

34.     With respect to J.P. Morgan's *Discounted Cash Flow Analysis* for Concho Resources and ConocoPhillips, the Registration Statement fails to disclose: (i) the companies' estimated value of the projected after-tax, unlevered, free cash flows the companies were forecasted to generate during fiscal years 2021 through 2030 and all line items used to calculate them; (ii) the terminal values for the companies; (iii) the inputs and assumptions underlying the

application the perpetuity growth rates to the estimated unlevered free cash flows of each company of 1.0% to 2.% for Cases A and B and 0.0% to 1.0% for Cases C and D; and (iv) the inputs and assumptions underlying the discount rates ranging from 10.5% to 12.5% for Concho Resources and 9.75% to 11.75% for ConocoPhillips.

35.     In sum, the omission of the above-referenced information renders statements in the Registration Statement materially incomplete and misleading in contravention of the Exchange Act.  Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff Against All Defendants for Violations of**
**Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

36.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

37.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading."  17 C.F.R. § 240.14a-9.

38.     Defendants have issued the Registration Statement with the intention of soliciting stockholder support for the Proposed Transaction.  Each of the Defendants reviewed and authorized the dissemination of the Registration Statement and the use of their name in the

Registration Statement, which fails to provide critical information regarding, among other things, the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

39.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Registration Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

40.     Defendants were, at the very least, negligent in preparing and reviewing the Registration Statement.  The preparation of a Registration Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  Defendants were negligent in choosing to omit material information from the Registration Statement or failing to notice the material omissions in the Registration Statement upon reviewing it, which they were required to do carefully.  Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives.

41.     The misrepresentations and omissions in the Registration Statement are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.  Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

42.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

43.     The Individual Defendants acted as controlling persons of Concho Resources within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as directors of Concho Resources, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Concho Resources, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

44.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

45.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Concho Resources, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.  The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction.  The Registration Statement at issue contains the unanimous recommendation of the Board to approve the Proposed

Transaction.   The Individual Defendants were thus directly involved in the making of the Registration Statement.

46.     In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.   The Registration Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered.   The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

47.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

48.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein.   By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.   As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

49.     Plaintiff has no adequate remedy at law.   Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**RELIEF REQUESTED**

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A.     Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Registration Statement;

B.      Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C.      Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D.      Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E.      Granting such other and further equitable relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury.

Dated: November 23, 2020                    **RIGRODSKY & LONG, P.A.**

                                     By:  */s/ Gina M. Serra*
**OF COUNSEL:**                           Brian D. Long (#4347)
                                          Gina M. Serra (#5387)
**WOLF HALDENSTEIN ADLER**                300 Delaware Avenue, Suite 210
**FREEMAN & HERZ LLP**                    Wilmington, DE 19801
Gloria Kui Melwani                        Telephone: (302) 295-5310
270 Madison Avenue                        Facsimile: (302) 654-7530
New York, NY 10016                        Email: bdl@rl-legal.com
Telephone: (212) 545-4600                 Email: gms@rl-legal.com
Facsimile: (212) 686-0114
Email: melwani@whafh.com                  *Attorneys for Plaintiff*